BROWN–GRAVES COMPANY et al., Appellees,

v.

OBERT et al., Appellants.

[Cite as *Brown–Graves Co. v. Obert* (1994), 98 Ohio App.3d 517.]

Court of Appeals of Ohio,
Summit County.

Nos. 16690, 16706.

Decided Oct. 26, 1994.

*Marybeth G. Maxwell* and *Scott Ruport; Joseph Zeglen; Wylan W. Witte; James Kandel* and *James Adlon;* and *Robert Roland,* for appellees.

*Lawrence J. Cook; Bradley P. Toman; Patricia Ritzert;* and *Michael D. Saad,* for appellants.

QUILLIN, Presiding Judge.

Appellants, Ralph E. and Kathleen Obert and Ravenna Savings and Loan ("Ravenna Savings"), appeal from the trial court's order of summary judgment in favor of appellee, Brown–Graves Company ("Brown–Graves"), and the trial court's adoption of a referee's report and recommendations which awarded appellees, Miller Electric Company, Inc. ("Miller"), Rex's Reliable Air Conditioning and Heating ("Rex's"), and DSD Building Supply Company ("DSD"), damages on theories of unjust enrichment. We reverse and remand.

On May 1, 1991, Ralph and Kathleen Obert contracted with general contractor Jeff Henry, Inc. for the construction of a single-family residence to be built in Hudson, Ohio. The Oberts financed construction of the dwelling by obtaining an open-ended mortgage with Ravenna Savings. The contract between Jeff Henry, Inc. and the Oberts set a total contract price of $191,453. The contract provided

for incremental payments to the contractor upon different stages of completion of the dwelling. The payment schedule was as follows: (1) ten percent upon completion of the foundation; (2) thirty percent upon completion of the rough structure; (3) thirty percent after installation of the drywall; (4) twenty percent upon completion of the interior trim; (5) ten percent upon the completion of the job or when the purchaser accepts occupancy, whichever occurs first.

Jeff Henry, Inc. ("Henry") hired subcontractors and materialmen and commenced construction of the dwelling in September 1991. On October 4, 1991, Henry was paid $14,145.30 on the contract for completion of the first stage of construction. Additionally, a $5,000 deposit supplied by the Oberts to Henry was credited to the first disbursement. On November 14, 1991, Henry received a second payment of $57,435.90. On January 24, 1992, Henry was paid an additional $57,435.90 for completion of the third stage of the construction project.

On March 20, 1992, the Oberts received a copy of an affidavit of mechanic's lien from Brown–Graves. Brown–Graves was hired by Henry to supply materials in the construction of the Oberts' residence. On March 21, 1992, the Oberts and Henry agreed to cancel both parties' future obligations and to treat the $134,-017.10 already paid to Henry as full payment under the contract. In April and May 1991, the subcontractors, Miller and Rex's, and the materialman, DSD, also filed mechanic's liens with the Summit County Recorder.

Brown–Graves filed a complaint in Summit County Common Pleas Court, seeking recovery under its contract with Henry via foreclosure on its mechanic's lien or, in the alternative, recovery under the theory of unjust enrichment against the Oberts and Henry. Additionally, Brown–Graves joined Rex's, Miller and DSD as defendants in order to establish the priority of its lien. The complaint was amended on November 12, 1992, to include a claim against Ravenna Savings for gross negligence in disbursing funds to Henry.

Defendants, Miller, DSD and Rex's, filed cross-claims against Henry, and the Oberts, seeking to foreclose upon mechanic's liens or, in the alternative, to recover under a theory of unjust enrichment. Miller, DSD and Rex's additionally amended their complaints to include claims against Ravenna Savings for disbursing funds to Henry in a grossly negligent manner.

The Oberts filed a counterclaim against Brown–Graves and cross-claims against Miller, DSD and Rex's, seeking recovery for damages sustained because of the materialmen's and subcontractors' failure to release their claimed liens. The Oberts also filed a cross-claim against Henry and a third-party complaint against Jeff Henry in his personal capacity for failure to pay subcontractors under the contract. Additionally, the Oberts filed a cross-claim against Ravenna Savings, alleging gross negligence in disbursing funds to Henry.

Prior to the disposition of the issues, Henry received a bankruptcy stay. The case proceeded through discovery and numerous motions for summary judgment were filed. On February 3, 1993, the trial court issued a summary judgment order, declaring that Brown–Graves had a valid mechanic's lien on the Oberts' property in the amount of $32,139.54. This position was reaffirmed by the trial court in orders dated June 23, 1993 and July 15, 1993. The remaining issues were assigned to a referee pursuant to Civ.R. 53. The referee issued a report and recommendation stating that Miller, DSD and Rex's had failed to perfect mechanic's liens, but granting those parties $3,300, $8,658.48, and $250, respectively, on theories of unjust enrichment. The Oberts filed objections to the referee's report and recommendations. On January 31, 1994, notwithstanding the Oberts' objections, the trial court adopted the referee's report and recommendations.

On February 10, 1994, after a status conference, the trial court determined that the sole issue left to be adjudicated was the Oberts' cross-claim against Ravenna Savings for gross negligence in its disbursement of funds to Henry. On February 15, 1994, the trial court granted the joint motion of Ravenna Savings and the Oberts to dismiss the Oberts' remaining cross-claim with prejudice. On March 15, 1994, the court entered a final judgment order stating that all the claims have been adjudicated and incorporating all previous orders and entries.

The Oberts and Ravenna Savings appeal from the trial court's final judgment order. Both the Oberts and Ravenna Savings appeal the court's order granting summary judgment in favor of Brown–Graves on its mechanic's lien in the amount of $32,139.54. The Oberts additionally appeal the trial court's adoption of the referee's recommendations which award judgment in favor of Miller, DSD and Rex's on theories of unjust enrichment.

### Brown–Graves's Mechanic's Lien

■ Appellants claim that it was error for the trial court to enforce Brown–Graves's mechanic's lien, claiming that the lien was rendered ineffective pursuant to R.C. 1311.011(B)(1) and (B)(2). R.C. 1311.011(B)(1) prevents the creation of a valid mechanic's lien when a homeowner has made full payment to a contractor on a home construction contract:

"No subcontractor, materialman, or laborer has a lien to secure payment for work done, or for labor, materials, machinery, or fuel furnished by him, in connection with a home construction contract between the original contractor and the owner * * * if the owner * * * paid the original contractor in full or if the purchaser has paid in full for the amount of the home construction * * * price, and the payment was made prior to the owner's * * * receipt of a copy of an affidavit of mechanic's lien pursuant to section 1311.07 of the Revised Code."

It is undisputed that after receiving three payments totalling $134,017.10, Henry informed the Oberts that it would be unable to complete the construction project due to financial difficulties. The last of these payments was made on January 24, 1992. Further, it is undisputed that Henry and the Oberts agreed to treat the $134,017.10 as full payment for the work which Henry had completed as of March 21, 1992. The Oberts received Brown–Graves's affidavit of mechanic's lien on March 20, 1992. Appellants argue that the modification of the construction contract price and concomitant discharge of any further construction obligations of Henry and the Oberts' future payment obligations constituted "payment in full" under R.C. 1311.011.

To the contrary, Brown–Graves argues that "payment in full" refers specifically to the price agreed upon in the original contract and that a subsequent modification of the contract price does not affect what constitutes full payment with regard to R.C. 1311.011(B)(1). Brown–Graves has made no allegation of fraudulent activity on the part of the Oberts or Ravenna Savings. As there are no facts in dispute with regard to this issue, and there is no allegation of fraud and misdealing, we are left with a pure question of law, requiring an interpretation of R.C. 1311.011(B)(1). We agree with appellants that, in the absence of fraud, full payment under R.C. 1311.011(B)(1) includes payment of the entire amount of a home construction contract as modified.

In determining what constitutes full payment under R.C. 1311.011(B)(1), we are principally guided by the legislature's purpose in drafting the amended versions of R.C. 1311.011 and 1311.012, commonly known as the "Home Owners Amendment." The Home Owners Amendment was enacted to "prevent the owner of a single or double family dwelling who is a party to a home purchase contract from being required to pay more than the amount due the general contractor where the general contractor has not paid a subcontractor, materialman or laborer." *Universal Drywall, Inc. v. Eads* (Oct. 6, 1981), Franklin App. No. 81AP–232, unreported, 1981 WL 3502. In other words, the amendment protects a homeowner, who has not received an affidavit of mechanic's lien, from having to pay both a general contractor-builder and a subcontractor for the same services. Instead of protecting subcontractors and materialmen at the risk of double payment by homeowners, the amendment requires subcontractors and materialmen to obtain payment for the services which they have rendered from the general contractor-builder to the extent that the homeowner has paid the general contractor-builder for such services.

In *Universal Drywall, supra*, Judge Moyer, now Chief Justice of the Supreme Court of Ohio, wrote the opinion for the Tenth District Court of Appeals which suggested that the contract price to be considered under R.C. 1311.011(B)(1) includes modifications to the contract. That court stated that the homeowner had

admittedly not paid the full price of the contract as amended, but that a default judgment entered in favor of the homeowner extinguished the balance of the obligation owing to the builder and, therefore, the trial court properly considered the builder to be "paid in full" as required by R.C. 1311.011. Although *Universal Drywall* differs slightly from the case *sub judice* in that the contract price was judicially modified, we see no reason, absent fraud, why full payment under R.C. 1311.011(B)(1) should be determined using the original contract price rather than the contract price as modified by agreement of the general contractor and homeowner.

■ Appellants also argue that the trial court erred in failing to find that Brown–Graves was prevented from having a valid mechanic's lien by operation of R.C. 1311.011(B)(2). That subdivision stated in pertinent part:

"If the original contractor has not been paid in full as provided in division (B)(1) of this section, no subcontractor, materialman, or laborer has a lien to secure payment for work done, or for labor, material, machinery, or fuel furnished by him for an amount greater than the amount due under the home construction contract that has not been paid to the original contractor for the work, labor, materials, machinery, or fuel[.]"

Appellants specifically argue that, even if the contract is considered not to be paid in full, the cost of completing construction of their dwelling is greater than the amount unpaid on the original contract and, therefore, there is no "amount due" on the home construction contract. Appellants supplied the lower court with uncontroverted evidence that, while $57,435.90 was left unpaid on the original contract price of $191,453, the estimated cost to complete construction of the dwelling totalled $59,174.

Brown–Graves counters by arguing that appellants' calculation of the "amount due" relies on the statutory definition of "amount due" included in a recent amendment to R.C. 1311.011(B)(2), which is designated to take effect with respect to contracts entered into after January 1, 1992. Accordingly, Brown–Graves argues that appellants are not entitled to a retrospective application of the statutory definition of "amount due" and, therefore, the "amount due" is simply the unpaid amount of the original contract price.

Appellants claim that the definition of "amount due" added to R.C. 1311.011(B)(2) was not a fundamental change in mechanic's lien law, but was intended to clarify existing law. In support of their position, appellants cite *Artisan Custom–Maid, Inc. v. Buyck* (Mar. 26, 1992), Cuyahoga App. Nos. 59385 & 59395, unreported, 1992 WL 62167. In *Artisan,* the Eighth District Court of Appeals applied the definition of "amount due" contained in the April 10, 1991 amendment to R.C. 1311.011 to a contract entered into prior to January 1, 1992.

In applying the amended definition, the court stated that such "revisions to R.C. 1311.011(B)(2) clarified the intent of the legislature by adding a definition of 'amount due'[.]" *Id.* We agree that the definition is merely a clarification of previously existing law and believe that such a method of calculation is consistent with the general purpose of the Home Owners Amendment in assuring that homeowners are not required to pay twice for the same services.

### Unjust Enrichment

Ralph and Kathleen Obert claim that it was error for the trial court to adopt the referee's recommendations awarding Miller, DSD and Rex's $3,300, $8,658.48, and $250, respectively, on theories of unjust enrichment. The trial court, apparently without the benefit of a transcript of testimony, adopted the referee's findings, stating that there was "no error of law or defect on the face of the Referee's Report" in its order dated January 31, 1994.

Pursuant to Civ.R. 53(E)(5), a trial court must determine whether there is any error of law or other defect on the face of the referee's report before adopting the referee's report and recommendations as its own. Furthermore, the trial court is required to review objections to the referee's report which are appropriately filed under Civ.R. 53(E)(2). The Oberts filed objections to the referee's report and recommendations, claiming that the analysis applied by the referee in ordering relief to Miller, DSD and Rex's on unjust enrichment theories was legally deficient. The Oberts claim that the referee ordered relief solely on the basis that Miller, DSD and Rex's suffered a loss, without determining whether the Oberts received an inequitable gain from the labor and materials supplied by Miller, DSD and Rex's.

In order to recover under a theory of unjust enrichment, a plaintiff must demonstrate the following: (1) a benefit conferred by the plaintiff upon a defendant; (2) knowledge by the defendant of such benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 249–250, 465 N.E.2d 1298, 1302; *Interstate Steel Erectors, Inc. v. H. & L. Wolff, Inc.* (1984), 17 Ohio App.3d 173, 174, 17 OBR 304, 305–306, 478 N.E.2d 245, 246–247, fn. 1. In *Fairfield Ready Mix v. Walnut Hills Assoc., Ltd.* (1988), 60 Ohio App.3d 1, 572 N.E.2d 114, the First District Court of Appeals considered a claim for unjust enrichment made by a subcontractor against a corporate entity which had hired a general contractor to construct certain buildings. The court held that, because the defendant had paid the general contractor for the materials supplied by the materialman, the defendant had sustained no gain and, therefore, the materialman did not possess a claim for unjust enrichment.

"In the instant case, the plaintiff has suffered a 'loss' since the plaintiff has not been paid for the materials provided for the construction project. However, [the defendant has] not sustained a 'gain.' [The defendant] forwarded money to [the

general contractor] to pay for the materials. The materials used by [the defendant] for the construction project were paid for by [the defendant]. Therefore, [the defendant] has not been unjustly enriched[.]" *Id.* at 3, 572 N.E.2d at 116.

■ Although the referee's report states that evidence that the subcontractors' and materialman's contributions to the property were not a benefit to the Oberts was lacking, it is not the defendant's burden to disprove an inequitable benefit resulting from the plaintiff's actions. The plaintiff is required to prove the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment. See *Interstate Steel Erectors, supra,* 17 Ohio App.3d at 174, 17 OBR at 305–306, 478 N.E.2d at 246–247, fn. 1. Accordingly, we believe it was error for the trial court to adopt the referee's report and recommendations as legally sufficient on their face.

Appellants' assignments of error are sustained. Accordingly, we reverse the trial court's order awarding summary judgment in favor of Brown–Graves on its mechanic's lien and reverse the trial court's adoption of the referee's report and recommendations concerning issues of unjust enrichment.

*Judgment accordingly.*

DICKINSON and VICTOR, JJ., concur.

WILLIAM H. VICTOR, J., retired, of the Ninth Appellate District, sitting by assignment.