OPINION
Plaintiff-appellee, City Wide Supply, Inc. ("City Wide"), filed a complaint on September 3, 1998, naming as defendants Professional Air, Inc. ("Professional Air"), Ben F. Jackson ("Jackson") and Bernard G. Stamm ("Stamm"). In its complaint, City Wide alleged four separate counts which were as follows: Count One for recovery on an account; Count Two for breach of contract; Count Three for unjust enrichment; and Count Four for fraud. Reference in the complaint was made to an open account application for credit, which was completed and signed by Jackson, that contained a guarantee which read in its entirety: "I personally guarantee payment of all City Wide Supply, Inc. invoices."
Prior to trial, City Wide dismissed its claims against Stamm and secured a default judgment against Professional Air. The case then proceeded to trial against Jackson on the guarantee. At trial, the parties stipulated that the outstanding amount owed on the account was $25,297.21, that there was no issue as to the quantity or quality of materials delivered to Professional Air by City Wide, and that Jackson signed the open account application which contained the foregoing guarantee language.
At the conclusion of the trial to the court, the court held that the guarantee was valid and non-ambiguous, that Jackson signed the guarantee at the time the line of credit was established, that he understood this to be a guarantee, and that he failed to notify City Wide that he was revoking the guarantee or would no longer be obligated under the guarantee. The court entered judgment against Jackson for the stipulated amount owed on the account, $25,297.21, plus interest from the date of judgment.
Jackson appeals, asserting the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANT-APPELLANT WAS A GUARANTOR.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED BY NOT LIMITING DEFENDANT-APPELLANT'S LIABILITY AS A GUARANTOR TO THE SUM OF $4,000.00.
 ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT'S CONCLUSION THAT DEFENDANT-APPELLANT WAS UNJUSTLY ENRICHED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
There is no question that Professional Air, a corporation, owed City Wide $25,297.21 for supplies delivered to them on an open account that was unpaid. A default judgment was rendered against the corporation for that amount; however, the corporation had no assets at that time and no means to pay the debt.
The issue in this appeal is whether Jackson, who was the president and majority stockholder of Professional Air at the time that Professional Air opened a line of credit with City Wide, owed the amounts because he had signed a personal guarantee requiring him to do so. The guarantee was signed on April 30, 1990, and, as pertinent, reads as follows:
OPEN ACCOUNT APPLICATION
 For the purpose of establishing an open account with City Wide Supply, Inc. the following statement in writing is made, intending that it should be relied upon as correct. All information will be kept confidential.
* * *
Credit line desired with our company $4000-4500.00.
The buyer as undersigned has read the other side and agrees to the above.
I personally guarantee payment of all City Wide Supply, Inc. invoices
Firm Name: Professional Air, Inc.
Signed by: /s/ Ben F. Jackson
Title: President
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
Date rec'd _____________________ Line of credit APPROVED $4000.
Approved by: /s/ [illegible] Date 4/30/90
The first question is whether the open account application constitutes a personal guarantee by Jackson for payment (at least to some extent) of City Wide invoices.
Jackson acknowledged in his testimony that he was familiar with personal guarantees, that he had probably executed such a guarantee in the past, and that the guarantee in the open account application says that it is a personal guarantee.
We hold that Jackson did execute a personal guarantee of City Wide invoices on April 30, 1990. The document is not ambiguous in that respect and a personal guarantee by Professional Air would not add to the obligation that it already had, which was to pay for supplies delivered by City Wide. Audrey Slye testified that she has been the bookkeeper for City Wide for the past thirteen years and was in that position in April 1990. Slye stated that it was the policy of City Wide to always get a personal guarantee of someone associated with a corporate customer and that it was their intent to have the guarantee signed by Jackson. Slye stated that the information below Jackson's signature told them that the personal guarantee had been signed, and that they then went forward with checking out the corporation's credit and the suppliers that were listed, after which they opened an account based on that information. Slye stated that if the personal guarantee had not been signed, they would not have proceeded with the application. Upon checking the references, she found that the credit references were excellent and notified Professional Air that there was an initial limit of $4,000 and that it would be increased as they needed it. She stated that she advised Jackson of this. Slye said that she had no further discussion with Jackson about the guarantee and did not seek his personal guarantee for amounts exceeding $4,000.
On October 16, 1996, Jackson sold his shares in Professional Air, retaining only a one percent interest in the corporation. He and his wife continued to work there but they were strictly minority stockholders after that period of time. City Wide was given no notice of this change in ownership.
There is no ambiguity in the fact that Jackson personally guaranteed payment of all City Wide invoices, at least to the extent of the initial credit line of $4,000, which was consistent with the application by the corporation for a credit line of $4,000 to $4,500. There is no provision in the guarantee limiting it timewise and, since there was no communication concerning termination of the personal guarantee, it remained in effect at the time the open account was terminated on August 21, 1998.
Appellant's first assignment of error is overruled. The trial court correctly held that appellant was a guarantor.
Appellant's second assignment of error is that the trial court erred by not limiting appellant's liability as a guarantor to the sum of $4,000.
This claim is based upon Jackson's personal guarantee which appeared on the open account application only and in relationship to a credit line of $4,000. While the language in the personal guarantee states that it applies to all invoices, that provision must be read in conjunction with the credit line sought and the credit line approved, which was $4,000. It is, in the least, ambiguous whether Jackson intended to be personally liable for the obligations of Professional Air above $4,000. A guarantor, like a surety, is bound only by the precise words of his contract read in light of the surrounding circumstances, and of the object intended to be accomplished. See G.F. BusinessEquip., Inc. v. Liston (1982), 7 Ohio App.3d 223, 224. Any ambiguity in a guarantee agreement, particularly one prepared by the party seeking a guarantee, must be construed against that party. Since the personal guarantee was sought from Jackson in relation to a credit application of $4,000 to $4,500, for which $4,000 was approved, it is a reasonable construction of the guarantee that Jackson's personal liability was to be limited to $4,000. When Professional Air was allowed to expand its open account, no further written guarantee was sought personally from Jackson, and he should not be liable for a guarantee in excess of what he had initially promised.
Appellee cites the case of Hughes Supply, Inc. v. Stage1 Mechanical, Inc. (May 30, 1997), Darke App. No. 1416, unreported, in support of its argument that Jackson's liability was for all of the indebtedness ultimately incurred by Professional Air, rather than $4,000. In Hughes Supply, Inc., the guarantee of payment of all indebtedness and liability was specifically stated to be of every kind, nature and character (including all renewals, extensions and modifications thereof and there was no provision for a credit limit). Hughes Supply, Inc.,supra, is clearly distinguishable from the situation herein where the personal guarantee was specifically made in regard to an application on behalf of the corporation for an open account line of $4,000 to $4,500, and where $4,000 was approved.
Appellant's second assignment of error is sustained. The trial court erred by not limiting appellant's liability as a guarantor to the sum of $4,000.
Appellant thirdly asserts that the trial court's conclusion that he was unjustly enriched is against the manifest weight of the evidence.
First, it is questionable as to whether the trial court found liability on the basis of unjust enrichment. The trial court stated, as part of its decision, the following:
 * * * So I think part of the scenario here is we are talking about unjust enrichment. We have an equity problem here. But I don't think we need to even get to that, albeit I think it's significant. But what I can't get over as a matter of law is this: I think the law is such, and I agree with your case out of the second circuit, that Mr. Jackson, you have got an obligation to notify these people if you want this stopped. Just like I have an obligation if someone steals my credit card tonight, I have got an obligation to call that creditor and say that card has been stolen, stop credit. Is that an analogy that we can understand? [Tr. 60-61.]
The trial court's analogy pertaining to personal credit cards is not applicable to the situation herein. The credit line belonged to the corporation, not Jackson. Jackson's obligation was to be personally responsible based solely on his guarantee to the extent that the guarantee was made, not extending automatically to further increases or change of circumstances relating to the supplier and Professional Air. In order to hold Jackson responsible for anything further, it would be necessary to obtain an additional personal guarantee from him, which was not done.
Appellant is not liable under the theory of unjust enrichment. In 1998, at the time the corporation was bankrupt and the additional obligations were incurred, Jackson was a one percent shareholder. He had no authority relating to ordering supplies or making payments for those supplies. When the corporation was liquidated, Jackson received nothing from the liquidation.
 In order to recover under a theory of unjust enrichment, a plaintiff must demonstrate the following: (1) a benefit conferred by the plaintiff upon a defendant; (2) knowledge by the defendant of such benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. * * *
See Brown-Graves Co. v. Obert (1994), 98 Ohio App.3d 517, 523. The trial court apparently based its comments about unjust enrichment upon the fact that the corporation did not notify City Wide that they were in financial difficulty and that Jackson did not notify City Wide of his change of circumstances in regard to ownership of the company. The mere fact that he continued to be an employee of the company and remained a one percent stockholder did not result in any unjust enrichment to him.
Appellant's third assignment of error is sustained.
Appellant's first assignment of error is overruled, and appellant's second and third assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court to reduce the judgment in favor of appellee, City Wide Supply, Inc., and against appellant, Ben F. Jackson, to the sum of $4,000, plus interest at the statutory rate from September 30, 1999.
 ________________________ McCORMAC, J.
TYACK and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.