The ARLINGTON NATURAL GAS COMPANY, Appellee,

v.

MARTENS, Appellant.

[Cite as *Arlington Natural Gas Co. v. Martens*, 173 Ohio App.3d 450, 2007-Ohio-5479.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–06–58.

Decided Oct. 15, 2007.

Stephen C. Betts, for appellee.

George Martens, pro se.

WILLAMOWSKI, Judge.

{¶ 1} Defendant–appellant, George Martens, appeals from the October 11, 2006 judgment entry of the Findlay Municipal Court granting judgment in favor of plaintiff-appellee, Arlington Natural Gas Company, and against Martens in the amount of $248.86 plus interest and costs for payment for gas service at Martens's rental property from January 12, 2005, to February 1, 2005.

{¶ 2} Martens is the equitable owner of real property located at 16865 State Route 103 in Mt. Blanchard, Ohio. This equitable ownership is based upon a land installment contract, entered into between Martens and his wife Carolyn [1] and the Blanchard Valley Health Association on February 10, 1995. Martens rented the property out to tenants, and Arlington supplied natural gas to the property. Martens had rented the property to a tenant named Tammy Bowers, and until early January 2005, she was listed as the responsible party on the gas service account with Arlington. However, Arlington stopped billing Bowers on January 11, 2005, after receiving a telephone call from Terri Hollis, who advised Arlington that Bowers had vacated the property and that Hollis was moving in as the new tenant.

{¶ 3} On January 11, 2005, Arlington sent a letter to Hollis with an enclosed deposit card, advising Hollis to complete and return the card with a deposit of $192 to Arlington. This letter also advised Hollis that the gas service account would not be put into her name until the deposit was paid and the card was completed, signed, and returned to Arlington.

{¶ 4} On January 12, 2005, Arlington read the gas meter located on the property, took the account out of Bowers's name, and unilaterally put it into Martens's name. No notice was provided to Martens that the gas service account would be placed in his name or that it was in fact placed in his name. The gas service account remained in Martens's name until February 1, 2005, whereupon Arlington transferred the account into Hollis's name, as the responsible party, after receiving the required deposit.

{¶ 5} On July 22, 2005, Arlington filed a complaint in the Findlay Municipal Court alleging that Martens owed Arlington $248.86 on account for the gas service between January 12 and February 1, 2005. Martens filed a timely answer to Arlington's complaint and asserted a counterclaim; however, Martens failed to pay the required court cost deposit for filing a counterclaim.[2] On October 20, 2005, the trial court issued a judgment entry striking Martens's counterclaim due to his failure to pay the court-costs deposit, despite repeated notifications to do so. This matter was subsequently set for a pretrial on November 21, 2005.

---

1. Carolyn is now deceased.

2. On September 1, 2005, the municipal court notified Martens by letter that the court was unable to process his counterclaim because there was an $85 filing fee associated with such a filing. The court advised Martens that once it received the money, it would process his counterclaim. On September 30, 2005, the municipal court sent Martens a second request for costs and advised that if the $85 filing fee was not received within 14 days, the counterclaim would be stricken.

{¶ 6} On November 10, 2005, Martens filed a motion to join parties and requested that Charles Hollis and Terri Humm, Martens's tenants at the residence during the relevant time period related to this action, be joined as parties. At the hearing on November 21, 2005, the trial court granted Martens seven days to file an appropriate third-party complaint with a deposit.[3] The trial court continued the pretrial conference to April 20, 2006. On February 21, 2006, Martens filed a motion for summary judgment, and this matter was also set for hearing on April 20, 2006.

{¶ 7} At the April 20, 2006 hearing, the trial court overruled Martens's motion for summary judgment because the motion was based upon Arlington's failure to respond to Martens's request for discovery, which discovery requests the court found to be improperly formatted and filed. In an April 20, 2006 pretrial order, the trial court granted Martens 30 days to amend and refile his discovery in accordance with the Ohio Rules of Civil Procedure.[4] The pretrial was subsequently rescheduled to June 15, 2006.

{¶ 8} At the June 15 pretrial hearing, the trial court addressed discovery matters and Martens's motion for sanctions for Arlington's failure to provide discovery. The court denied Martens's motion for sanctions because Martens's discovery was again not properly filed and Arlington had responded to Martens's discovery requests on June 13, 2006.

{¶ 9} This matter proceeded to a bench trial on October 9, 2006. At the close of evidence, the trial court found that Martens was the owner of an equitable interest in the property and was therefore responsible for payment for gas service to the property from January 12 to February 1, 2005. The court rendered judgment in favor of Arlington in the amount of $248.86 plus interest and costs.

{¶ 10} Martens now appeals, asserting seven assignments of error.

Assignment of Error No. 1

The trial court denied a right of a jury trial.

Assignment of Error No. 2

The trial [sic] erred as a matter of law that ownership of a rental property demands payment for gas service instituted by the renters by the owner.

---

3. Martens never filed a third-party complaint, even though the issue was again addressed by the trial court at the April 20, 2006 hearing.

4. On April 25, 2006, Martens filed a motion for reconsideration regarding the trial court's April 20, 2006 denial of his motion for summary judgment. However, in a judgment entry dated May 15, 2006, the trial court overruled Martens's motion for reconsideration.

### Assignment of Error No. 3

The trial court ruled opposite to Ohio law, statutes, and code.

### Assignment of Error No. 4

The trial court ruled against contract law and unjustly enriched another.

### Assignment of Error No. 5

The trial court ruled against summary judgment for discovery failures.

### Assignment of Error No. 6

The trial court erred as a matter of law since no evidence was given as to responsibility under any law, code, agreement, instructions, contract theory or otherwise, having only one witness, who sent the bill out; the trial court erred in not requiring the moving party to satisfy its initial burden of production on its affirmative defense.

### Assignment of Error No. 7

The trial court erred in its rulings (a) when it allowed a witness not disclosed by the plaintiff and basic to ownership, if that was a just basis for the court to rule on (b) against evidence (c) using a nonexistent lease as a basis of rule.

{¶ 11} In his first assignment of error, Martens contends that the trial court erred in not setting this case for a jury trial when a jury demand was made and neither party waived this request. Civ.R. 38(B) governs the right to jury trials, and provides:

> Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefore at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue. Such demand shall be in writing and may be indorsed upon a pleading of the party. If the demand is endorsed upon a pleading the caption of the pleading shall state "jury demand endorsed hereon."

Civ.R. 38(B). Once properly demanded, a jury trial is required unless the parties later stipulate to a trial by the court or the court determines that the right to a jury trial as to some or all of the issues does not exist. Civ.R. 38(A). The failure of a party to serve a demand as required by Civ.R. 38 and to file it as required by Civ.R. 5(D) constitutes a waiver by him of trial by jury. Civ.R. 38(D).

{¶ 12} Section 5, Article IV, of the Ohio Constitution provides that courts may adopt additional rules concerning local practice in their respective courts that are not inconsistent with the rules promulgated by the Supreme Court. Pursuant to

this authority, the Findlay Municipal Court adopted its "Local Rules of Practice, Procedure and Administration" effective February 1, 2005. Rule 13 of the Findlay Municipal Court Local Rules of Practice provides: "Costs and filing fees in all civil actions are established by a schedule adopted by the judges of this court. A schedule for fees and costs is available at the Clerk's Office and is subject to change without notice." According to the adopted fee schedule, effective March 1, 2005, a $300 deposit is required to accompany a jury demand. "$100.00 must be with filing, and the balance of deposit must be paid at least 21 days before trial, otherwise the jury demand will be stricken."

{¶ 13} On August 31, 2005, Martens filed an answer to Arlington's complaint. However, Martens's answer is silent as to a demand for a jury trial and does not state, "[J]ury demand endorsed hereon," in accordance with Civ.R. 38(B). Although Martens's counterclaim, also filed on August 31, 2005, states "Jury demand. Plaintiff demands a trial by jury on all claims so triable," this language is set forth only at the end of Martens's counterclaim and the caption of this pleading also does not state, "[J]ury demand endorsed hereon." See Civ.R. 38(B).

{¶ 14} The trial court addressed the matter of a jury trial at the June 15, 2006 pretrial hearing. The trial court noted that Arlington did not file a jury demand with its complaint. The trial court also determined that Martens never filed a proper demand for a jury trial. Therefore, Martens had no right to a jury trial and, accordingly, had waived his demand for a jury trial. On October 20, 2005, the trial court struck Martens's counterclaim in its entirety due to Martens's failure to pay the $85 fee required for filing a counterclaim. Martens's counterclaim is the only pleading that included a jury demand.

{¶ 15} Martens argues that the denial of his right to a jury trial is a violation of his rights under the United States and Ohio Constitutions. However, while the right to a jury trial is a fundamental constitutional right, it is subject to moderate and reasonable regulations. *Lehman v. Smith* (Oct. 3, 2000), 5th Dist., No. 2000CA00034, 2000 WL 1608827. For example, the Ohio Supreme Court has held that local rules that require an advance deposit as security for the cost of a jury trial and that provide that failure of a party to advance the deposit constitutes a waiver of the right to a jury trial are "moderate and reasonable regulations of the right to a trial by jury." *Walters v. Griffith* (1974), 38 Ohio St.2d 132, 67 O.O.2d 145, 311 N.E.2d 14 syllabus. In *Walters*, the Ohio Supreme Court clearly stated that such rules are valid and do not impair the constitutional right to a jury trial. Moreover, R.C. 1901.26(A)(3) provides as follows:

> When a jury trial is demanded in any civil action or proceeding, the party making the demand may be required to make an advance deposit as fixed by rule of court, unless, upon affidavit or other evidence, the court concludes that

the party is unable to make the required deposit. If a jury is called, the fees of a jury shall be taxes as costs.

{¶ 16} Martens did not pay the $300 fee, or even the $100 deposit required by the schedule for deposits and fees when filing a jury demand upon the filing his answer *or* counterclaim.[5] Pursuant to the exact language of the fee schedule adopted by the Findlay Municipal Court, this failure is sufficient reason for the court to strike his jury demand. Martens's own inaction in effect waived his right of trial by jury. Thus, the trial court did not err in striking the jury demand. The first assignment of error is overruled.

{¶ 17} In the second assignment of error, Martens argues that the trial court's judgment that he is liable for the utilities merely because he is the equitable owner of the property is error as a matter of law. This court has previously held that the law of Ohio requires some sort of authority to impose liability on the property owner for the utility services consumed by a tenant. See *Burden v. Waynesfield* (May 13, 1987), Auglaize App. No. 2–85–31, 1987 WL 11177. This rule applies whether the utility company is attempting to recover through a lien on the real estate or through a claim of personal liability brought against the owner. Id. In *Burden,* Burden owned real estate within Waynesfield and the village supplied the real estate with water. The real estate was occupied by a tenant. When the tenant failed to pay the water bill, the village stopped service. The village then began proceedings to recover the overdue funds from the owner of the real estate. Burden filed an action for declaratory judgment. The trial court granted summary judgment to the village because a local ordinance imposed liability on the owner of the property for all water usage regardless of who used the water. This court then affirmed the decision, finding that because Burden had consented to the ordinance by using the village utilities to supply the water, the village had the authority to recover the outstanding account from Burden when the tenant did not pay. This court held that the authority to collect from the owner arose because there was an ordinance permitting recovery.

{¶ 18} This case is different because there is no authority permitting Arlington to recover from Martens on the overdue account. Martens at no time consented either to transfer the account into his name or to pay for the gas usage. The facts are clear that Martens's tenant contacted Arlington and asked that the service be placed in her name. Martens did not at any time consent to responsibility for the gas used by his tenant. The evidence is that Martens did not even know that Arlington had unilaterally transferred the gas service account

5. Furthermore, Martens never applied for a waiver of the deposit by submitting an affidavit or other evidence to the trial court establishing that he was unable to pay it.

into his name. The dissent agrees that Martens did not expressly consent to pay Arlington, but claims that Arlington had consent to charge Martens for the utilities based upon a land contract between Martens and the Blanchard Valley Health Association.[6] The dissent claims that because Martens agreed that as between himself and the Blanchard Valley Health Association, Martens would assume all utility charges after the date of possession and hold Blanchard Valley Health Association harmless from those charges, he therefore somehow agreed to be billed by Arlington for his tenant's usage. However, the contract does not specify which utility companies will benefit from the agreement. Arlington is not a party to the land contract. The Ohio Supreme Court has held that only intended third-party beneficiaries to a contract have enforceable rights under that contract. *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780.

> Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.
>
> * * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient * * *.

Id. at 40, 521 N.E.2d 780.

The intent of the contract was to ensure that Blanchard Valley did not have to pay for the utilities after possession was given to Martens, not to guarantee that Arlington would get paid or that Martens would be responsible for the utilities as against the world, including his own tenants. Thus, at best, Arlington is an incidental beneficiary of the contract and has no right to rely upon or enforce the terms of the land contract.

{¶ 19} Without any consent to be responsible from Martens, Arlington should have followed the directions of the tenant and charged her for the gas used after the date specified. The tenant had consented to liability. However, the tenant had no authority to bind Martens to the contract she entered into with Arlington. No evidence was presented by Arlington to prove that Martens had agreed to be liable for the gas usage of the tenant or that he was liable pursuant to statute or

---

**6.** The land contract upon which the dissent relies specifies that as between Martens and Blanchard Valley, after the date of transfer (either through possession or agreement, whichever is later), Martens is liable for the utilities, not Blanchard Valley. The contract does not provide any liability as between Martens and third parties. Blanchard Valley is not a party to this suit and has not been alleged to be liable for the utilities.

ordinance. Thus, Arlington had no basis in law for holding Martens liable on the account.

{¶ 20} Arlington also claims that it should recover under the theory of unjust enrichment. The theory is that since Martens owns the real estate to which the gas was supplied, Martens received the benefit of the utilities. "In order to recover under a theory of unjust enrichment, a plaintiff must demonstrate the following: (1) a benefit conferred by the plaintiff upon a defendant; (2) knowledge by the defendant of such benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Brown–Graves Co. v. Obert* (1994), 98 Ohio App.3d 517, 523, 648 N.E.2d 1379. Arlington has not presented any evidence with which to show that Martens received the benefit of the gas. The tenant was the one who requested the gas and used the gas. Although it is argued that Martens received some benefit because his property was heated and the tenant stayed there, that same benefit could have been received by use of the alternative electric heat source or by receiving gas service from another source. Also, there is specifically no evidence that Martens had knowledge of the benefit. The tenant was the one who contacted Arlington and decided which source of heat to use. Thus, there was no evidence in the record that Martens knew of the benefit. Finally, although it might be unjust for Arlington to supply the gas without payment, Arlington had another remedy. Arlington could have requested payment from the tenant who both authorized Arlington to bill her for the gas usage and who received the direct benefit of the gas supply.

{¶ 21} Since there was no authority upon which to hold Martens liable for the gas, the trial court erred as a matter of law in finding Martens liable for the gas used by his tenant merely because he is the equitable owner of the property. The second assignment of error is sustained.

{¶ 22} Since the trial court erred as a matter of law in holding Martens liable for the gas usage, the remaining assignments of error are moot and need not be addressed by this court. The judgment of the Municipal Court of Findlay is reversed, and the cause is remanded with instructions to dismiss Arlington's complaint.

*Judgment reversed
and cause remanded.*

ROGERS, P.J., concurs.

SHAW, J., concurs in part and dissents in part.

SHAW, J., concurring in part and dissenting in part.

{¶ 23} I concur with the majority as to the first assignment of error, concluding that Martens's own inaction in effect waived his right to a jury trial. However, because I believe that the majority misconstrues the decision of the trial court regarding the significance of the land installment contract in this case, I respectfully dissent from the balance of the majority opinion.

{¶ 24} On February 13, 1995, Martens and his wife entered into a land installment contract with Blanchard Valley Health Association for the property at issue in the present case. The contract reflected that George and Carolyn Martens agreed to pay Blanchard Valley Health Association $45,000 for the property. This contract was admitted into evidence at trial and specifically contained a provision regarding utilities:

All water, sewer, gas, electric and other utility bills, and any current operating expenses relating to the property, shall be prorated as of the date of this agreement or the date possession of the property is given to Vendee, whichever is later, and Vendee *shall assume all such utility charges* and operating expenses after that date.

(Emphasis added.) Martens did not present any testimony or documents to refute the terms of the land installment contract.

{¶ 25} For the period of time at issue in this case, the tenants had not yet completed the registration process with Arlington to be billed for the gas usage. Moreover, during this period Arlington could not have turned off the gas to the property because R.C. 4933.12(C) and (D) provide that a gas company may not stop gas from entering the premises of any residential consumer between November 15 and April 15. Additionally, R.C. 5321.04(A)(6) provides that a landlord who is a party to a rental agreement shall supply running water and reasonable heat at all times. Martens himself acknowledged this fact, testifying that once Arlington supplied gas to the property on January 11, 2006, he could not go into the property and turn the gas off on the new tenant; otherwise he would "find myself in court for another issue because she was in the house" and "it would be hard to switch off that and then have to show up in court to have to answer for switching off natural gas."

{¶ 26} Contrary to the apparent understanding of the majority, no one has ever argued or ruled that Martens was contractually obligated to Arlington by the terms of the land contract to pay this gas bill. However, the trial court was entitled to and did consider the terms of the land contract, including the promises to assume utility charges, as evidence of Martens's equitable ownership of—and hence responsibility for—the maintenance of this property in the absence of any other clear indication of responsibility, such as we have for the limited time period at issue in this case. Therefore, the trial court simply determined that as

between Martens, the gas company, and the new tenant, Martens as the equitable owner of the property should be responsible for the gas usage during the period up until the gas was properly transferred into the new tenants' names.

{¶ 27} In my view this was an entirely reasonable decision, well within the prerogative of the trial court to make based on the particular facts of this case. In contrast, the majority rule from this court would now appear to compel any utility company to shut off the utility as a first response by conclusively excluding even temporary recourse against an owner of property when there is any indication, however unconfirmed, that a tenant may be involved with the premises at any time in the future.

{¶ 28} Because I find no error of law or abuse of discretion in finding that Martens as the equitable owner of the property was responsible for payment for gas service to the property during the time period at issue in this case, I would overrule the second assignment of error and affirm the decision of the trial court in its entirety.