**BROOKVILLE FLOOR COVERINGS UNLIMITED, Appellant,**

v.

**FLEMING et al., Appellees.**

[Cite as *Brookville Floor Coverings Unlimited v. Fleming,*
151 Ohio App.3d 456, 2003-Ohio-311.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19424.

Decided Jan. 24, 2003.

458

Richard B. Reiling and Melissa Schindler, for appellant.

Alan A. Biegel, for appellees.

WOLFF, Judge.

{¶ 1} Brookville Floor Coverings Unlimited ("Brookville") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted judgment in favor of Douglas and Gwendolyn Fleming ("the Flemings") on a contractual dispute and ordered Brookville to release a mechanic's lien on the Flemings' home.

{¶ 2} Many of the facts in the case are not in dispute. In May 1999, the Flemings contracted with Woodside Construction, Inc. ("Woodside") for the construction of a new home at a price of $203,000. The contract was subsequently amended to provide for a partially finished basement at an additional cost of $9,000, bringing the total contract price to $212,000. The contract provided for an allowance of $10,000 for floor coverings with the understanding that the Flemings would be responsible for any amount spent in excess of the allowance. Brookville was on a list of subcontractors provided to the Flemings by Woodside, and the Flemings arranged to have tile, wood, and carpet floor coverings for their entire home provided by Brookville. The total cost of the selected floor coverings was $14,438.06. Brookville addressed its quotation to Woodside Construction, but Gwendolyn Fleming signed the quotation.

{¶ 3} In December 1999, while the Flemings' home was still under construction, Woodside went out of business. By this time, some, but not all, of the flooring had been installed. Approximately $177,050 had been paid to Woodside, but Brookville had not been paid for any of the flooring it had installed. Brookville filed a mechanic's lien pursuant to R.C. 1311.06, claiming that it was owed $10,725.[1]

---

1. Brookville actually filed two liens against Woodside on the same date relating to two lots in the same development on which Woodside had been constructing homes. Copies of both liens are in the record, but only one relates to the property owned by the Flemings.

{¶ 4} The Flemings hired Prestige Construction Company ("Prestige") to finish their house. Brookville refused to finish the flooring because it had not been paid for the work already completed. In February 2000, the Flemings' attorney informed Brookville that the Flemings believed that they were entitled to a release of the lien pursuant to R.C. 1311.011 and requested that Brookville release the lien. Brookville refused to do so.

{¶ 5} On November 28, 2000, Brookville filed a complaint seeking $10,725 from the Flemings. The Flemings filed a counterclaim seeking a declaration that the mechanic's lien was void and seeking damages, including legal fees, related to the lien. The matter was referred to a magistrate, and a hearing was held on July 2, 2001. The magistrate ruled in favor of the Flemings, finding that Brookville's contract had been with Woodside, not with the Flemings, and that Brookville should have been paid by Woodside. The magistrate further found that R.C. 1311.011 protected the Flemings from having to pay twice for services received from a subcontractor where they had already paid the general contractor the full contract price and that the Flemings had, in fact, paid more than the original contract price to complete the house. The magistrate also awarded attorney fees to the Flemings. Brookville filed an objection to the magistrate's decision. On May 13, 2002, the trial court overruled Brookville's objection and adopted the magistrate's findings of fact and conclusions of law.

{¶ 6} Brookville raises four assignments of error on appeal:

{¶ 7} "I. The trial court erred by finding for appellees on appellees' claim under R.C. § 1311.011(B)(3)."

{¶ 8} R.C. 1311.011(B)(1) provides that a subcontractor may not obtain a lien to secure payment for labor or material furnished in connection with a home construction contract if the owner paid the original contractor in full and payment was made prior to the owner's receipt of a copy of an affidavit of mechanic's lien. R.C. 1311.011(B)(3) provides that upon receiving notice that full payment has been made by the owner for the amount of the home construction contract and that payment was made prior to the owners' receipt of a copy of an affidavit of mechanic's lien, the lienholder must cause the lien to be released within 30 days or be liable for damages.

{¶ 9} Brookville argues that the Flemings had not paid the contract with Woodside in full prior to receiving notice of the mechanic's lien, and therefore it had not been required to release its lien upon receipt of the Flemings' attorney's letter in February 2000. We have held, however, that even if the owner has not paid the general contractor in full, he is not liable to a subcontractor for any amount greater than the unpaid balance of the contract, minus the cost to complete the contract according to its terms. *Booher Carpet Sales, Inc. v.*

*Erickson* (Oct. 2, 1998), Greene App. No. 98–CA–0007, 1998 WL 677159. It follows from our holding in *Booher* that the Flemings were entitled to determine the cost of completing their house prior to making payment to any subcontractor who had not been paid by Woodside. Although it appears that the Flemings had not yet entered into a contract with Prestige to complete their home when the mechanic's lien was filed, and therefore had not yet paid the full contract price, they had received a bid from Prestige in an amount greater than the amount owing on the contract with Woodside for comparable work. Therefore, the trial court properly found that, pursuant to R.C. 1311.011(B)(1), the Flemings had not been required to pay Brookville. Moreover, pursuant to R.C. 1311.011(B)(3), Brookville had been required to release its lien within 30 days of being informed of these facts by the Flemings' attorney.

{¶ 10} The first assignment of error is overruled.

{¶ 11} "II. The trial court erred by determining that appellant's lien was invalid."

{¶ 12} Brookville argues that the trial court should have found its lien to be valid despite some errors in its execution because it substantially complied with R.C. 1311.06. The errors at issue, according to Brookville, were the filing of the lien in the name of "Douglas Roark, dba Brookville Floor Coverings" rather than "Brookville Floor Coverings Unlimited, Inc." and the indicating of Woodside as the entity with whom the contract had been entered into rather than the Flemings.

{¶ 13} Although the trial court did acknowledge these alleged errors, it did not rule on their effect on the lien, if any, nor did it rely on them in determining that the lien was invalid. Indeed, it does not appear to us that the alleged errors played any role in the trial court's decision. Accordingly, the second assignment of error is overruled.

{¶ 14} "III. The trial court erred by failing to award appellant the sum of $10,725.00."

{¶ 15} Brookville's argument under this assignment of error relies upon its assertion that the Flemings contracted with it directly and that their contract with Woodside was totally separate from the contract with Brookville. Brookville claims that its contract could not have been with Woodside because there had been no meeting of the minds and because Woodside had been unaware of the terms of the Flemings' agreement with Brookville. Thus, it claims that the Flemings were required to pay under the contract notwithstanding any payments made to Woodside.

{¶ 16} This argument relates to the issue presented under the first assignment of error, i.e., a customer's obligation to pay a subcontractor when a general

contractor fails to do so. We rely on that discussion here. However, we will also briefly address the question of whether the Flemings were obligated to pay Brookville because they had entered into a contract with Brookville independent of their contract with Woodside. Conflicting evidence was presented on this issue at trial.

{¶ 17} Brookville presented testimony that it was the company's practice to contract directly with homeowners to insure the accuracy of the customers' selections and that Woodside had not been a party to its contract with the Flemings. The Flemings, on the other hand, testified that they had chosen Brookville from a list of contractors provided by Woodside and that Woodside was to pay Brookville. Although the Flemings acknowledged that they were responsible for the additional cost of the floor coverings to the extent that it exceeded the $10,000 allowance in their contract with Woodside, they presented some evidence that the balance was to be reflected in the final amount owed to Woodside, not by payment to Brookville directly. More important, the Flemings introduced two documents drafted by Brookville that indicated that its contract had been with Woodside: the price quotation for the floorings selected, which was signed by Gwendolyn Fleming but was typed as "Quoted to: Woodside Const.," and the lien documents, which also indicated that the materials and labor had been provided pursuant to contract with Woodside. We also note that the Flemings' contract with Woodside stated that "the Contractor shall furnish all the materials" for the residence.

{¶ 18} An appellate court will not reverse the judgment of the trial court if the decision is supported by some competent, credible evidence going to all essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. This standard rests on the strong presumption that the trial court, as the trier of fact, is in the best position to weigh the evidence presented, assess the credibility of the witnesses, and make an informed factual determination therefrom. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 19} There was ample evidence from which the trial court could have reasonably concluded that Brookville's contract had been with Woodside and not with the Flemings, that Brookville had expected to be paid by Woodside, and that the Flemings had not agreed to be personally responsible for payment for the floor coverings purchased from Brookville for their home. Because the trial court's conclusions were supported by the evidence, we will not disturb them on appeal.

{¶ 20} The third assignment of error is overruled.

{¶ 21} "IV. The trial court erred by failing to find that appellees were unjustly enriched."

{¶ 22} Brookville contends that the Flemings received "an unfair windfall" due to the fact that they did not pay Woodside in full and also did not pay Brookville for the flooring directly.

{¶ 23} Brookville's argument misconstrues the evidence. The evidence at trial established that the amount that had been paid to Woodside when it went out of business was equivalent to the value of the work that had been completed on the Flemings' house at that point, including the flooring that had been installed. Also, the Flemings' contract with Prestige for completion of the house was greater than the balance owing on the original contract for comparable items. Based on this evidence, the Flemings took the position, and the trial court reasonably found, that the Flemings had paid Woodside for the flooring that had been installed by the time Woodside went out of business. Although Prestige did complete some additional items for the Flemings, such as a wood deck, the trial court reasonably found that the Flemings had paid for these items over and above the amount owed on the original contract. Thus, although the Flemings received the benefit of flooring for which Brookville had not been paid, they were not unjustly enriched because they had paid Woodside for the value of the flooring. R.C 1311.011 protects the Flemings from being required to pay twice. Brookville's action must be against Woodside.

{¶ 24} The fourth assignment of error is overruled.

{¶ 25} The judgment of the trial court will be affirmed.

Judgment affirmed.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.