[Cite as *Graves Lumber Co. v. Croft*, 2014-Ohio-4324.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

GRAVES LUMBER CO.

    Appellant/Cross-Appellee

v.

LANCE A. CROFT, et al.

    Appellees/Cross-Appellants

C.A. Nos.     26624
                 26678

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011-02-0855

DECISION AND JOURNAL ENTRY

Dated: September 30, 2014

WHITMORE, Judge.

{¶1}     Appellant, Graves Lumber Co. ("Graves Lumber"), appeals from the judgment of the Summit County Court of Common Pleas. Cross-Appellants, Lance and Paula Croft (collectively "the Crofts"), appeal from the same judgment on a different basis. This Court affirms in part, reverses in part, and remands.

I

**Factual Background**

{¶2}     After deciding to relocate from Maryland to Ohio, the Crofts planned to have a custom home built in Bath Township, Ohio. In order to build the home, the Crofts received two construction loans from First Place Bank. In September 2008, Mr. Croft entered into a construction contract with Old World Classics by Phil Eggeman, Inc. ("Old World Classics") for $827,093. Old World Classics began construction of the home and engaged various subcontractors, including Graves Lumber.

{¶3} As work progressed, First Place Bank made payments to Old World Classics based on the percent completed and payment requests signed by Old World Classics and the Crofts. In May 2009, First Place Bank disbursed loan proceeds to Old World Classics bringing the total paid at that time to $520,372.32. In June 2009, the Crofts began to suspect that Old World Classics was having financial difficulties that might prevent it from completing their home.

{¶4} On September 4, 2009, the Crofts terminated the contract with Old World Classics. Thereafter, the Crofts hired Fred Zumpano Design and Construction Inc. ("Zumpano") to complete the home. Zumpano estimated the cost to complete the home would be $272,346.

{¶5} Multiple subcontractors performed work on the home under both general contractors, Old World Classics and Zumpano. Because various subcontractors did not receive payment for all of the work they performed, they filed affidavits for mechanics' liens against the Crofts' property. Graves Lumber was one of the partially unpaid subcontractors who filed a mechanic's lien.

**Pleadings**

{¶6} After construction of the home was completed, Graves Lumber filed a complaint in the Summit County Court of Common Pleas. Graves Lumber alleged breach of contract, unjust enrichment, account, and promissory estoppel counts against Old World Classics. Graves Lumber also brought an unjust enrichment claim against the Crofts along with a claim for foreclosure of its mechanic's lien. Contemporaneously with the filing of its complaint, Graves Lumber filed a preliminary judicial report for the subject property. In its complaint, Graves Lumber named the subcontractors identified in the preliminary judicial report as having filed mechanics' liens against the property. These included: Miller Custom Stone, Ltd., Ron Kreps

Drywall & Plastering Company, TCI Contracting, LLC, DIII Construction, Inc., Mullet Cabinet, Inc., and Maple Lane Wood, LLC. Graves Lumber also named First Place Bank, the State of Ohio Department of Taxation, and the Summit County Fiscal Officer, as defendants with potential interests in the subject property.

{¶7} In its prayer for relief, Graves Lumber sought monetary damages from Old World Classics for breach of contract, account, unjust enrichment, and promissory estoppel. Graves Lumber also sought monetary damages from the Crofts on its mechanic's lien and unjust enrichment claims. Graves Lumber included a demand that "all defendants be required to set up their claims to the Property, if any, or be forever barred." It further sought foreclosure and that the liens be marshalled and paid according to their priority on the subject property.

{¶8} Most of the mechanics' lienholders filed answers. Mullet Cabinet, Inc. ("Mullet Cabinet") and Maple Lane Wood, LLC ("Maple Lane Wood") answered, admitted that they had valid interests in the property based on their mechanics' liens, and raised various affirmative defenses.[1] Miller Custom Stone, Ltd. ("Miller Custom Stone") answered generally denying the allegations for lack of knowledge and requested that its "judgment lien" be protected and paid in accordance with its priority. Ron Kreps Drywall & Plastering Company ("Kreps Drywall") answered, admitted its interest in the subject property, and filed a cross-claim against the Crofts asserting unjust enrichment and foreclosure of its mechanic's lien. TCI Contracting, LLC and DIII Construction, Inc. failed to answer the complaint.

{¶9} The Crofts answered Graves Lumber's complaint and Kreps Drywall's cross-claim controverting the prayers for relief and raising several affirmative defenses. The other primary defendant, Old World Classics, failed to file an answer. First Place Bank answered

_____

[1] These defenses were not pursued by the parties below and are not at issue in this appeal.

stating that the Crofts had executed two promissory notes, both secured by mortgages on the subject property. First Place Bank asserted various affirmative defenses and prayed that if the subject property was sold that its liens be paid first. The State of Ohio Department of Taxation filed an answer requesting that its interest be protected. The Summit County Fiscal Officer did not answer.[2]

**Trial**

{¶10} The matter was set for a bench trial. Counsel for Graves, the Crofts, First Place Bank, Mullet Cabinet, and Kreps Drywall appeared at the trial. Counsel for the other lienholders did not. The parties filed a written stipulation that First Place Bank had two promissory notes and mortgages on the subject property. Graves Lumber also acknowledged "the mortgages are [the] first and best liens." The parties stipulated that Mullet Cabinet properly filed and perfected a mechanic's lien against the subject property in the amount of $17,075. Graves Lumber refused to sign a stipulation regarding Kreps Drywall's mechanic's lien until it produced a certified mail receipt demonstrating service of the lien. Once that was provided, they stipulated that Kreps Drywall recorded and served a mechanic's lien in the amount of $15,743. Kreps Drywall further agreed to "release the [m]echanic's [l]ien and dismiss any [c]ross [c]laims upon payment." Counsel for Mullet Cabinet and Kreps Drywall did not participate in the remainder of the trial after their respective stipulations were signed by the other parties.

{¶11} Miller Custom Stone and Maple Lane Wood did not appear at trial, but had previously circulated stipulations regarding their mechanics' liens. Graves Lumber did not sign the stipulations regarding Miller Custom Stone or Maple Lane Wood, although the other

---

[2] Summit County Local Rule 11.05 provides that the Summit County Treasurer need not file an answer to a foreclosure complaint when the taxes are not in dispute.

answering parties did. Graves Lumber stated that it would not stipulate as it "[didn't] know that the mechanic's lien was served and perfected in accordance with 1311.07."

{¶12} Noting the multiple counts in its complaint, counsel for Graves Lumber stated, "the focus of this hearing will be on the mechanic's lien." After Graves Lumber rested its case, the trial court questioned, "You're agreeing that most of the claims you raised in your complaint are now gone, if you're resting at this time?" Counsel for Graves Lumber responded, "I have my unjust enrichment claim against Croft and my mechanic's lien against Croft. * * * The rest are gone." Graves Lumber did not file a dismissal of its claims against Old World Classics, nor did the trial court enter a formal verdict regarding those claims.[3]

### Post-trial Briefs

{¶13} Pursuant to a briefing schedule set by the court, Graves Lumber filed a post-trial brief. Graves Lumber argued that, in completing their home, the Crofts had exceeded their contract with Old World Classics by $56,128.47. Graves Lumber listed itself, Mullet Cabinet, and Kreps Drywall as lienholders entitled to share in this fund. The Crofts filed a response, and Graves Lumber filed a reply.

{¶14} Thereafter, Miller Custom Stone and Maple Lane Wood filed a joint brief in opposition to Graves Lumber's post-trial brief. Miller Custom Stone and Maple Lane Wood argued that Graves Lumber impermissibly ignored the stipulations regarding their mechanics' liens. While acknowledging that Graves Lumber had not signed the stipulations, they argued that the Crofts had signed them, thus, establishing the validity of the liens. They also noted that

---

[3] On remand, the trial court should address any undisposed claims.

Graves Lumber had not asserted any claims seeking to discharge their mechanics' liens.[4] They requested that the court consider the validity of their liens when rendering its judgment.

{¶15} Graves Lumber moved to strike the joint brief filed by Miller Custom Stone and Maple Lane Wood. Mullet Cabinet joined in Graves Lumber's motion to strike. Miller Custom Stone and Maple Lane Wood filed a memorandum in opposition, and Graves Lumber filed a reply.

**Judgment Entries**

{¶16} On May 18, 2012, the trial court issued a judgment entry in the case. The trial court found that the Crofts and Old World Classics had not modified the original contract. The trial court tallied various items that it found exceeded the allowances provided for in the contract with Old World Classics by a total amount of $56,128.47. The trial court held that amount was properly due to the subcontractors who filed mechanics' liens in the action. The trial court attached a table purporting to divide this sum pro rata among Miller Custom Stone, Maple Lane Wood, Graves Lumber, Mullet Cabinet, and Kreps Drywall.

{¶17} Regarding the unjust enrichment claim, the trial court found, "Through his testimony, [Mr. Croft] established that [Graves Lumber] conferred a benefit on him (lumber and labor), that he had knowledge of it, and that he retained the benefit." Both Graves Lumber and the Crofts appealed the May 18, 2012 entry. This Court dismissed those appeals for lack of a final, appealable order. This Court noted:

> According to the documents submitted by Graves Lumber and Lance and Paula Croft, the trial court did not resolve the unjust enrichment claim brought by Graves [Lumber] because it did not specify the amount awarded. Nor did it resolve the unjust enrichment cross claim brought by Ron Kreps Drywall & Plastering Company. Because those claims remain outstanding, and the trial court

---

[4] For instance, Graves Lumber could have brought a declaratory judgment count. *See Ohio Farmers Ins. Co. v. Earles*, 5th Dist. Stark No. 2010CA00259, 2011-Ohio-3103, ¶ 7.

did not certify this matter for immediate appeal, this Court is without jurisdiction to consider this attempted appeal.

{¶18} On September 5, 2012, the trial court issued another judgment entry. It again granted Graves Lumber's claim for compensatory damages on its mechanic's lien count and distributed the funds among the same lienholders. In this second entry, the trial court expressly found that neither Graves Lumber nor Kreps Drywall[5] proved their unjust enrichment claims. The trial court did not include language indicating "there is no just reason for delay" pursuant to Civ.R. 54(B). Graves Lumber filed a notice of appeal. This Court questioned whether the September 5, 2012 entry was final and appealable stating:

> although appellant previously notified this Court that Old World Classics filed for bankruptcy and that 'eliminated claims against O[ld] W[orld] C[lassics],' it is unclear from the online docket how that elimination took place. Specifically, the docket does not appear to contain an entry addressing that issue. Nor does the order appealed from contain Civ. R. 54(B) language certifying this matter for immediate appeal.

{¶19} On September 21, 2012, the trial court issued a third judgment entry which mirrored the September 5, 2012 entry but added "[t]here is no just reason for delay." The Crofts then filed a notice of appeal. Graves Lumber moved this Court to substitute the September 21, 2012 entry as the judgment from which it was appealing. Construing Grave Lumber's motion as a request to amend its notice of appeal, this Court granted it. The matter is now before this Court with Graves Lumber raising two assignments of error and the Crofts raising four assignments of error.

{¶20} To facilitate the analysis, we rearrange and consolidate some assignments of error.

---

[5] Kreps Drywall has not appealed this determination.

II

Graves Lumber's Assignment of Error Number One

THE TRIAL COURT ERRED IN ALLOCATING A PORTION OF THE FUND AVAILABLE TO LIEN HOLDERS TO MILLER CUSTOM STONE, LTD. AND MAPLE LANE WOOD, LLC WHEN THOSE PARTIES FAILED TO ESTABLISH THE VALIDITY OF THEIR LIENS.

{¶21} In its first assignment of error, Graves Lumber states that the issue is "whether a lien holder is entitled to a portion of the available fund *without* providing any evidence of compliance with R.C. 1311, et seq. or participating at trial." (Emphasis sic.). When a party claims there was no evidence to support a claim, we review the trial court's judgment under a sufficiency-of-the-evidence standard. *See Bowers Constr. Co. v. Chuparkoff*, 9th Dist. Summit No. 24775, 2010-Ohio-419, ¶ 9. We view the evidence in the light most favorable to the prevailing party below and determine whether a reasonable trier of fact could find in favor of that party. *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, ¶ 8.

{¶22} Central to this assignment of error is the effect of stipulations submitted by Miller Custom Stone and Maple Lane Wood. Prior to trial, Miller Custom Stone and Maple Lane Wood circulated stipulations stating, in pertinent part, that they "properly executed and delivered [their] Affidavit[s] for Mechanic[s'] Lien[s] * * * pursuant to, and in full compliance with, Ohio Revised Code Chapter 1311 et seq." The stipulations detailed the amount owed to Miller Custom Stone was $63,792.49 and the amount owed to Maple Lane Wood was $11,574.00. All of the parties, except those in default of answer and Graves Lumber, signed those stipulations.

{¶23} A stipulation is "[a] voluntary agreement between opposing parties concerning some relevant point; esp[ecially], an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." *Black's Law Dictionary* 1455 (8th Ed.2004).

"Stipulations waive the necessity to produce evidence" regarding the stipulated item. *Shanklin v. Lowman*, 3d Dist. Logan No. 8-10-07, 2011-Ohio-255, ¶ 35.

{¶24} At the start of trial, Graves Lumber addressed the court regarding various stipulations. Graves Lumber had agreed to the stipulations of Mullet Cabinet and First Place Bank, but had not agreed to the stipulations of Miller Custom Stone, Maple Lane Wood, or Kreps Drywall. The record reflects that these stipulations were before the trial court during this colloquy. As counsel for Graves Lumber expressed his reasons for not signing the stipulations, the trial judge remarked, "You have my copy * * * of those things." As the discussion continued, the trial judge stated, "I'm holding in my hands a stipulation which attaches the mechanic's lien." Regarding the stipulation of Kreps Drywall, counsel for Graves Lumber stated that he would sign the stipulation once Kreps Drywall produced a certified mail receipt demonstrating service of the lien. Partway through the trial, counsel for Kreps Drywall returned with a fax and Graves Lumber agreed to that stipulation.[6] At that point, the trial judge stated, "That's fine. We're going to have all these things filed, so we'll take care of filing it for you." The trial concluded on February 24, 2012. Thereafter, on February 28, 2012, the stipulations of Mullet Cabinet, First Place Bank, Maple Lane Wood, Miller Custom Stone, and Kreps Drywall were all filed with the clerk of courts within minutes of each other.

{¶25} At the trial, Graves Lumber did not dispute the amount of the mechanics' liens, but did dispute the issue of whether they were properly served. With respect to Miller Custom

---

[6] That stipulation was never signed by Miller Custom Stone. If the argument that all parties must sign a stipulation for it to be effective were to be accepted, then the stipulation from Kreps Drywall would also be ineffective. No one, however, is making an argument on appeal to invalidate Kreps Drywall's stipulation.

Stone, counsel for Graves Lumber explained, "I believe, Your Honor, that they filed a mechanic's lien. I don't know that that mechanic's lien was served and perfected in accordance with 1311.07. So that's why I'm not signing that stipulation." Pursuant to R.C. 1311.07, the person filing an affidavit for a mechanic's lien "shall serve a copy of the affidavit on the *owner, part owner, or lessee* of the improved property." (Emphasis added.). "The plain intent of this statute is to assure notice of a lien claim against a property is provided to the owner." *Balco Corp. v. D.H. Overmyer Co., Inc.*, 43 Ohio App.2d 157, 162 (10th Dist.1975).

{¶26} The acceptable methods of service are listed in R.C. 1311.19. The affidavit can be served on an individual (1) by the sheriff or (2) by certified or registered mail, overnight delivery, hand delivery, or any other method including written evidence of receipt. R.C. 1311.19(A). The affidavit will also be considered served if (1) "[t]he person served acknowledges receipt of the notice, affidavit, or other document" or (2) it is proven by a preponderance of the evidence that the person being served actually received the affidavit. R.C. 1311.19(C). As the purpose of R.C. 1311.07 is to provide notice to the owner of the property, *see Balco* at 162, the "opposing parties" on the issue of service are the lienholder and the property owner, s*ee Black's* at 1455 (defining stipulation). R.C. 1311.19(C)(1), which permits the owner to acknowledge, and therefore stipulate, to the issue of service, is consistent with this purpose.

{¶27} In a civil case where the burden of proof is by a preponderance of the evidence, "[t]he trier need not conclusively believe a fact exists so long as the probabilities, when weighed, preponderate in favor of such." *W. Reserve Mut. Cas. Co. v. Eberhart*, 81 Ohio App.3d 93, 97 (9th Dist.1991). A preponderance of the evidence is less than clear and convincing evidence.

*Felton v. Felton*, 79 Ohio St.3d 34, 41 (1997). Neither standard requires "unequivocal" evidence. *See Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶28} Graves Lumber contends that the homeowner should not have the ability to stipulate to service if that issue is challenged by a third party. Graves Lumber argues, in effect, that if any party to a case fails to sign a stipulation, the stipulation cannot be considered at all by the trial court. The dissent would exclude the stipulation as "carry[ing] no evidentiary weight." Respectfully, we disagree with such a broad exclusion under the particular facts of this case.

{¶29} The present case is more complex than *State v. Herold*, 1st Dist. Hamilton Nos. C-910103, C-910104, & C-910105, 1991 WL 243620 (Nov. 20, 1991), which is cited by the dissent. *Herold* included only two parties, one of whom indicated his testimony "would be in direct dispute" to the stipulation. *Id.* at *1. Consequently, there was not an "acceptance by the parties of agreed facts." *Id.* at *2.

{¶30} By contrast, in the present case, there are multiple parties. When there are multiple parties, a stipulation is not binding upon a party who did not sign it, but remains "effective and binding" as to the parties who did sign it. *DeWitt v. Jensen*, 2d Dist. Montgomery No. 25768, 2014-Ohio-529, ¶ 22.[7] Thus, although Graves Lumber was not bound by the stipulations, they remained effective stipulations between the Crofts and Miller Custom Stone and Maple Lane Wood.

---

[7] *But see In re Sims*, 13 Ohio App.3d 37, 40 (12th Dist.1983) ("Where all parties do not agree to the proffered stipulation, the court *may* properly refuse to accept the matter into evidence." (Emphasis added.)). The word "may" indicates the decision whether to accept the stipulation is discretionary.

**{¶31}** The effect of having stipulations that are binding on some, but not all, parties in this case is resolved by the statutes governing service of mechanics' liens. R.C. 1311.07 requires service to be made upon "the owner, part owner, or lessee of the improved property or his designee." R.C. 1311.19(C)(1) provides that service is effective if the "person served acknowledges receipt of the notice, affidavit, or other document." The statutes do not require service upon another lienholder or another lienholder's acknowledgment to establish that service occurred. Pursuant to the statutes, the Crofts, as owners of the property, could stipulate that Miller Custom Stone and Maple Lane Wood served them with the affidavits for their liens. As Graves Lumber's agreement was not necessary to establish service, the fact that the stipulations did not bind Graves Lumber does not invalidate their effectiveness to establish service.

**{¶32}** Additionally, in the present case, unlike *Herold*, there was no proffered testimony that would be in dispute with the stipulations signed by the Crofts, Miller Custom Stone, and Maple Lane Wood. Graves Lumber merely offers speculation regarding what it might have asked Miller Custom Stone and Maple Lane Wood had they attended the trial. Graves Lumber alleges that it would have followed up on questions regarding the absence of a mailbox at the Crofts' Ohio property if it had not been prevented from doing so by Miller Custom Stone's and Maple Lane Wood's failure to appear at trial.

**{¶33}** While a party's failure to appear at trial may not be commendable, that does not automatically entitle the other party to judgment in its favor. *See Buckeye Supply Co. v. Sandhill Energy, Inc.*, 4th Dist. Washington No. 88 CA 38, 1990 WL 34093, *2 (Mar. 13, 1990). Graves Lumber was not prevented from inquiring into the service of Miller Custom Stone's and Maple Lane Wood's liens. If there were questions that Graves Lumber wanted to ask Miller Custom Stone or Maple Lane Wood, it could have issued subpoenas compelling their attendance at trial.

When a party is given the opportunity to be heard and fails to take advantage of that opportunity, the fault is not that of the adverse party or the court. *See City of Brunswick v. Brunswick Hills Twp. Bd. of Trustees*, 81 Ohio App.3d 252, 257 (9th Dist.1992); *see also Mack's, Inc. v. Mollohan*, 9th Dist. Lorain No. 01CA007970, 2002-Ohio-2659, ¶ 6.

{¶34} In addition, Graves Lumber did question Mr. Croft regarding whether he received affidavits for mechanics' liens against the property. Graves Lumber first questioned Mr. Croft regarding its own lien. Counsel for Graves Lumber asked whether Mr. Croft received a certified letter containing its affidavit for mechanic's lien. Mr. Croft acknowledged his signature on the return receipt that was introduced with the letter into evidence. The letter was sent to the Crofts' Maryland address where they were residing at the time. Then, counsel for Graves Lumber asked, "have you ever received a similar certified mail letter from Miller Custom Stone serving their lien of $63,000 on you and/or your wife?" Mr. Croft responded that they "received many, many liens" and he "would imagine Miller [Custom Stone] was in there too." Thus, Mr. Croft acknowledged that he received many affidavits for mechanics' liens at his Maryland address. His equivocal response regarding Miller Custom Stone did not negate his previous stipulation regarding that lien.

{¶35} Even if the trial court had not accepted the stipulations regarding Miller Custom Stone and Maple Lane Wood, our conclusion that service of their liens had been established would be the same. Service "can be proved by a preponderance of evidence that the person being served actually received the notice, affidavit, or other document." R.C. 1311.19(C)(2). Evidence need not be unequivocal to meet a preponderance-of-the-evidence standard. The stipulations were not the only evidence the Crofts received the affidavits of mechanics' liens. Graves Lumber submitted into evidence a letter from the Crofts' attorney to the attorneys for the

various mechanics' lienholders. The letter itemized the mechanics' liens against the property, including the liens filed by Miller Custom Stone and Maple Lane Wood. When questioned by counsel for Graves Lumber, Mr. Croft confirmed the "letter, to [his] knowledge, [was] accurate in all respects" at the time it was written.[8] This letter provides additional evidence that the Crofts received the affidavits for mechanics' liens of Miller Custom Stone and Maple Lane Wood. *See Prater v. Dashkovsky*, 10th Dist. Franklin No. 07AP-389, 2007-Ohio-6785, ¶ 18 ("the filing of a complaint, which includes a cause of action for slander of title, proves, by a preponderance of the evidence, that the party filing the complaint actually received the mechanic's lien affidavit, and, thus, satisfies R.C. 1311.19(C)(2)").

{¶36} Viewing the evidence in the light most favorable to Miller Custom Stone and Maple Lane Wood, a reasonable trier of fact could find that Miller Custom Stone and Maple Lane Wood served their affidavits for mechanics' liens on the Crofts. The Crofts stipulated that affidavits for those mechanics' liens had been delivered to them "in full compliance with[ R.C.] Chapter 1311." In addition, the Crofts' attorney wrote a letter listing the various mechanics' liens, including those of Miller Custom Stone and Maple Lane Wood. This letter, which Graves Lumber submitted into evidence, further demonstrates that the Crofts received the affidavits for those liens. Consequently, there was sufficient evidence of service for the trial court to find the mechanics' liens of Miller Custom Stone and Maple Lane Wood were valid, thus, entitling them to their pro rata shares of the fund.

{¶37} Finally, Graves Lumber argues the trial court's result is inequitable because Miller Custom Stone and Maple Lane Wood are benefitting from its efforts. Graves Lumber

---

[8] Counsel for Graves Lumber indicated that he had drawn lines through the liens of DIII Construction and TCI Contracting. We note that, in addition to the claims against Old World Classics, the trial court did not address these parties in its judgment entry.

presents no legal authority in support of its argument that the distribution is inequitable. Rather, Graves Lumber simply argues that by including Miller Custom Stone and Maple Lane Wood in the distribution it receives a lower percentage of the total.

{¶38} When there are insufficient funds to fully pay all lien claimants, R.C. 1311.011(B)(2) provides a formula for determining the amount to which each lienholder is entitled.

> The pro rata share shall be equal to the monetary amount of the amount due to the original contractor that is subject to * * * all valid mechanics' liens under the home construction contract multiplied by a fraction in which the denominator is the total monetary amount * * * of all valid mechanics' liens that arose out of the home construction contract, and the numerator is the amount claimed to be due by the lien claimant * * * under the home construction contract.

R.C. 1311.011(B)(2). The statute does not state that a mechanic's lienholder must be present at trial to receive its pro rata share. It was not error for the trial court to apply the statutory formula to determine the pro rata amount for each lienholder.

{¶39} Graves Lumber's first assignment of error is overruled.

### The Crofts' Assignment of Error Number Three

THE TRIAL COURT ERRED IN HOLDING THAT THE ORIGINAL CONTRACTOR WAS NOT PAID IN FULL AT THE TIME THIS CONTRACT WAS TERMINATED[.]

{¶40} In their third assignment of error, the Crofts argue that they paid Old World Classics in full for the work it and its subcontractors had completed up to the point of its termination. Consequently, the Crofts argue they should be entitled to the protections of R.C. 1311.011(B)(1).

{¶41} R.C. 1311.011(B) provides, in pertinent part:

> all liens * * * that secure payment for labor or work performed or materials furnished in connection with a home construction contract * * * are subject to the following conditions:

(1) No * * * subcontractor * * * has a lien to secure payment for labor or work performed or materials furnished by the * * * subcontractor * * * in connection with a home construction contract * * * if the owner * * * paid the original contractor in full * * * for the amount of the home construction * * * and the payment was made prior to the owner's * * * receipt of a copy of an affidavit of mechanics' lien * * *

(2) If the original contractor has not been paid in full as provided in division (B)(1) of this section, no subcontractor * * * has a lien to secure payment for labor or work performed or materials furnished by the subcontractor * * * for an amount greater than the amount due under the home construction contract that has not been paid to the original contractor for the work, labor, or materials * * *. The total amount of all liens for labor or work performed or for materials furnished in connection with a home construction contract that may be enforced in lien foreclosure proceedings shall not exceed the amount due under that home construction contract that has not been paid to the original contractor * * *

For the purposes of this section, the amount due under a home construction contract * * * is the unpaid balance under the home construction contract * * * minus the cost to complete the contract according to its terms and conditions, including any warranty or repair work.

{¶42} In support of their argument, the Crofts direct our attention to *Brown-Graves Co. v. Obert*, 98 Ohio App.3d 517 (9th Dist.1994). In that case, multiple payments were made to the original contractor prior to receipt of an affidavit for mechanic's lien. The homeowner and original contractor subsequently modified their contract to decrease the total contract price. The issue in *Brown-Graves* was whether "payment in full" under R.C. 1311.011(B)(1) was limited to the price agreed upon in the original contract or whether it included modifications. *Id.* at 521. We held that "in the absence of fraud, full payment under R.C. 1311.011(B)(1) includes payment of the entire amount of a home construction contract *as modified*." (Emphasis added.) *Id.* at 521.

{¶43} In the present case, the Crofts received Graves Lumber's affidavit of mechanic's lien in September 2009. At that point, Old World Classics had been paid $520,327.32. The original contract price for the Crofts' house was $827,093. Unlike *Brown-Graves*, there was no evidence of a modification decreasing the amount due under the original contract. In fact, Mr. Croft admitted on cross-examination that the contract price had never been reduced. Therefore, the Crofts are not entitled to the protections of R.C. 1311.011(B)(1).

{¶44} This does not mean that the Crofts have no protection; rather, they are entitled to the protections afforded in R.C. 1311.011(B)(2). R.C. 1311.011(B)(2) "protects the homeowner by limiting the amount lienholders may collect to the 'amount due under a home construction contract.'" *CitFed Mortg. Corp. of Am. v. Parish,* 10th Dist. Franklin Nos. 96APE07-909, 96APE08-988, 96APE08-1025, & 96APE08-1029, 1997 WL 156616, *4 (Apr. 3, 1997). The "Home Owners Amendment" contained in R.C. 1311.011 "protect[s] homeowners from paying twice for the same labor and materials." *Id.* at *5, citing *Brown-Graves* at 522. At the same time, homeowners cannot simply "ignore [an] affidavit of mechanics' lien and thus harm a subtrade's chances for collecting an amount owed." *Id.*

{¶45} The Crofts' third assignment of error is overruled.

<u>The Crofts' Assignment of Error Number Two</u>

THE TRIAL COURT ERRED IN HOLDING THAT THE ALLOWANCES FOR THE PHANTOM SCREENS, TOPSOIL AND GUTTER SCREENS WERE EXCEEDED[.]

<u>The Crofts' Assignment of Error Number Four</u>

THE TRIAL COURT ERRED IN NOT CONSIDERING THE ALLOWANCES AS A WHOLE AND BASED THE JUDGMENT ONLY ON THE ITEMS PRESENTED BY THE DEFENDANT[.]

**{¶46}** In their second and fourth assignments of error, the Crofts argue that the trial court incorrectly included certain allowances and excluded others in its judgment entry. In essence, they argue that the court improperly calculated the amount due to the lienholders.

**{¶47}** The Crofts are entitled to the protections of R.C. 1311.011(B)(2), which caps the total amount mechanics' lienholders may recover to the amount due under the home construction contract. "The total amount of all liens for labor or work performed or for materials furnished in connection with a home construction contract * * * *shall not exceed the amount due under the home construction contract* that has not been paid to the original contractor * * *." (Emphasis added.) R.C. 1311.011(B)(2). The amount due under a home construction contract is "the unpaid balance under the home construction contract * * * minus the cost to complete the contract according to its terms and conditions." *Id.*

**{¶48}** The trial court found "the defendant's second contractor[, Zumpano,] did not complete the construction according to the terms of the original contract." Prior to contracting with the Crofts, Zumpano provided an estimate to complete the construction based on plan drawings from the Crofts' contract with Old World Classics, but he did not review the specifications to that contract. The trial court focused on those specifications and determined the amounts by which various allowances had been exceeded. The court concluded this was the amount the lienholders were entitled to recover.

**{¶49}** But the trial court failed to determine what it would have cost to complete the original contract according to its terms and conditions. Its judgment entry contains neither the "unpaid balance under the home construction contract" nor "the cost to complete the contract according to its terms and conditions." *See* R.C. 1311.011(B)(2). Consequently, it failed to

calculate the amount due under the Crofts' home construction contract, which is the maximum amount the lienholders can recover under R.C. 1311.011(B)(2).

**{¶50}** Having determined that the trial court failed to apply the formula required by R.C. 1311.011(B)(2), the issues raised regarding specific allowances are not yet ripe for our review. The Crofts' second and fourth assignments of error are sustained to the extent that the trial court improperly calculated the amount due to the lienholders.

<u>The Crofts' Assignment of Error Number One</u>

THE TRIAL COURT ERRED IN HOLDING THAT E-MAIL WAS NOT AN ACCEPTABLE METHOD TO MODIFY A CONTRACT[.]

**{¶51}** In their first assignment of error, the Crofts argue that they modified their contract with Old World Classics through email communications because they were in Maryland and Old World Classics was in Ohio. The Crofts further argued, to the trial court, that they modified various contract specifications without increasing the contract price with Old World Classics. If the Crofts were correct that they modified the terms and conditions of the original contract, this could result in an increased "cost to complete the contract according to its terms and conditions" for Zumpano and, therefore, a decrease in the amount the lienholders could recover. *See* R.C. 1311.011(B)(2).

**{¶52}** The contract between the Crofts and Old World Classics specified:

Entire Agreement. This Agreement, together with all other documents incorporated herein by reference, contain the entire agreement of Owner and Contractor. Contractor and Owner acknowledge that there are no covenants, representations, warranties, agreements or conditions, either express or implied, which in any way affect, or correlate to this Agreement except for those expressly set forth herein above. This Agreement may not be changed, altered, or modified except by writing executed by the duly authorized representatives of Contractor and Owner.

{¶53}  Mr. Croft asserted, "I had e-mail exchanges going back and forth in writing with Andrew [Eggeman from Old World Classics] about glass and staircases and windows." Mr. Croft testified that the plans for the house changed from May 2008 to January 21, 2009.  He further stated, "I have every e-mail from [Old World Classics by] Eggeman Construction, every e-mail from Fred Zumpano.  I have every e-mail from every subcontractor I can possibly keep." Given this multitude of emails, we are puzzled by the fact that the Crofts submitted only three email exchanges into evidence.

{¶54}  Assuming without deciding that the trial court incorrectly concluded that email communications could not be used to modify the Crofts' contract with Old World Classics, the Crofts have not established that they were prejudiced thereby.  "It is fundamental that, to demonstrate reversible error on appeal, Appellants must not only demonstrate error by the trial court but they must also demonstrate that they were materially prejudiced by that error." *Collier v. Dorcik*, 9th Dist. Medina No. 03CA0103-M, 2004-Ohio-4062, ¶ 7.  Based on the emails in the record, we cannot conclude that the Crofts were prejudiced by the trial court's conclusion that their contract with Old World Classics had not been modified.

{¶55}  The first email exchange begins on July 21, 2009 from a supplier to Lance Croft requesting payment details for a glass countertop.  Lance Croft replied to this email stating, "we haven't forgot about you or the countertop payment."  These emails discuss payment, not a modification of the contract.

{¶56}  The second email exchange, dated September 3, 2009, is between a bank representative and Lance Croft.  The bank acknowledges that the Crofts' home had not yet been completed, that mechanics' liens had been filed, and that funds remained in the construction loan account.  The bank's representative concluded, "[i]t remains your choice who you will use to

finish your home, but you need to make a decision quickly." The day following this email, the Crofts terminated their contract with Old World Classics.

**{¶57}** The final email, dated February 24, 2012, is from Lance Croft to his attorneys. This email contains the subject line "Croft – 1242 Sellman timeline" and was sent the morning of the second day of the trial in this matter. In his timeline, Mr. Croft places September 11, 2008 as the date the contract with Old World Classics was signed and notes he "do[es] not have any record [he] could find of any changes to the contract or spec[ifications] from th[at] date forward." This contradicts his assertions that the contract was modified through email exchanges.

**{¶58}** As none of the emails that were introduced into evidence at the trial demonstrate a modification of the contract between Old World Classics and the Crofts, the Crofts have not established any prejudice. The Crofts' first assignment of error is overruled.

Graves Lumber's Assignment of Error Number Two

THE TRIAL COURT ERRED IN HOLDING THAT GRAVES LUMBER CO. FAILED TO PROVE ALL THE NECESSARY ELEMENTS OF ITS UNJUST ENRICHMENT CLAIM AGAINST LANCE AND PAULA CROFT.

**{¶59}** In its second assignment of error, Graves Lumber argues that it would be unjust for the Crofts to retain the benefit of the material and labor it supplied in constructing their home without compensating it. Graves Lumber notes our standard of review is whether the trial court's decision is against the manifest weight of the evidence. When reviewing the manifest weight, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice

that the [decision] must be reversed." *Jackovic v. Webb*, 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 23, quoting *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶60} An unjust enrichment claim requires: (1) that plaintiff conferred a benefit on defendant; (2) that the defendant knew of the benefit; and (3) that circumstances exist such that it would be unjust for defendant to retain that benefit without compensating plaintiff. *Apostolos Group, Inc. v. Josephson*, 9th Dist. Summit No. 20733, 2002 WL 242111, *1, (Feb. 20, 2002). Generally, a subcontractor must look to his contactor for payment, but a subcontractor may pursue an unjust enrichment claim against a homeowner when the original contractor is unavailable for judgment. *Id.*, citing *Booher Carpet Sales, Inc. v. Erickson*, 2d Dist. Greene No. 98-CA-0007, 1998 WL 677159, *7 (Oct. 2, 1998).

{¶61} In the present case, the trial court found that Old World Classics filed bankruptcy and, therefore, was unavailable for judgment. The court further found "Graves Lumber * * * failed to prove all of the necessary elements for [its] unjust enrichment claims against [the Crofts]." The court reasoned, "[the Crofts] did not plan or scheme to retain the benefits of [Graves Lumber's] labor without proper compensation."

{¶62} Graves Lumber argues that because the Crofts changed the contract, as completed by Zumpano, it would be unjust for them to retain the benefits provided by Graves Lumber. As discussed under the Crofts' second and fourth assignments of error, whether the contract was completed according to its terms and conditions is applicable to a mechanic's lien claim because "the cost to complete the contract according to its terms and conditions" is a piece of the formula for determining the subcontractors' recovery thereunder. *See* R.C. 1311.011(B)(2). We do not, however, find that it is applicable to Graves Lumber's unjust enrichment claim. Under the first

prong of an unjust enrichment claim, the plaintiff must have conferred a benefit upon the defendant. *Apostolos Group, Inc.* at *1.

**{¶63}** Walter Minick, an employee of Graves Lumber, testified that Graves Lumber last delivered materials to the Crofts' property in June 2009. Zumpano began to complete the Crofts' home as the new general contractor in October 2009. Zumpano confirmed, to his knowledge, that Graves Lumber did not work on site or deliver materials for the Crofts' home after he began work on it. As Graves Lumber performed no work and delivered no materials after Zumpano became the general contractor, it did not confer a benefit upon the Crofts during that time period. Graves Lumber cannot claim the benefits conferred upon the Crofts by others as part of its unjust enrichment claim.

**{¶64}** But Graves Lumber may have established an unjust enrichment claim for the benefits it conferred upon the Crofts prior to that time. The evidence was undisputed that Graves Lumber conferred a benefit on the Crofts and that the Crofts had knowledge of that benefit. At trial, the following exchange took place between counsel for Graves Lumber and Mr. Croft:

COUNSEL: My client put in $76,000 worth of lumber into your house.
CROFT: Not disputing that point. And there's a lot of other contractors that did work too.

This exchange demonstrates the benefit and knowledge prongs for Graves Lumber's unjust enrichment claim. Nonetheless, the Crofts contend that they have not retained that benefit unjustly because they paid Old World Classics for the labor and materials supplied by Graves Lumber.

**{¶65}** The focus of an unjust enrichment claim "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 21, quoting

*Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954).  Where a property owner has paid the general contractor for the materials or labor in issue, the property owner has "sustained no gain" and, therefore, has not been unjustly enriched.  *Brown-Graves*, 98 Ohio App.3d at 523, citing *Fairfield Ready Mix v. Walnut Hills Assoc., Ltd*, 60 Ohio App.3d 1 (1st Dist.1988); *see also Brookville Floor Coverings Unlimited v. Fleming*, 151 Ohio App.3d 456, 2003-Ohio-311, ¶ 23 (2d Dist.) ("Although the [homeowners] received the benefit of flooring for which [the subcontractor] had not been paid, they were not unjustly enriched because they paid [the original contractor] for the value of the flooring.").

{¶66}  The Crofts presented the testimony of Sheila Wistar, assistant vice president of construction lending at First Place Bank.  She testified that she managed the department that handled the disbursements for the Crofts' construction loan.  She verified the bank's transaction history for the Crofts' construction loan.  She indicated that the bank received a payment request from Old World Classics dated April 28, 2009.  Thereafter, a final disbursement was made to Old World Classics on May 5, 2009, as reflected in the bank's transaction history.

{¶67}  Graves Lumber's vice president and credit manager, Walter Minick, testified on its behalf.  Minick's job duties included the collection of credit accounts.  Minick provided invoices and an account history for all the labor and materials furnished by Graves Lumber for the Crofts' house.  He testified that the first delivery to the Crofts' property was in December 2008.  Counsel for the Crofts asked if any labor or materials was furnished by Graves Lumber after May 6, 2009.  Minick responded that there was "a delivery on June 26th [of] two doors" costing $851.77.  On direct exam, Mr. Croft conceded he had no argument regarding the amount for the two doors delivered by Graves Lumber in June 2009.

**{¶68}** After reviewing the record and the evidence, we do not find any conflicting testimony regarding when the Crofts, through the bank, paid Old World Classics and when Graves Lumber made its final delivery to their home. It was undisputed that the final payment to Old World Classics was in May 2009 and the final delivery from Graves Lumber was in June 2009. Therefore, the payments to Old World Classics did not include all the materials supplied by Graves Lumber for the Crofts' house. To the extent that Graves Lumber performed services and made deliveries prior to May 2009, the Crofts were not unjustly enriched because they paid their general contractor, Old World Classics, for those items. But, to the extent that Graves Lumber made deliveries after May 2009, the Crofts were unjustly enriched. The uncontroverted evidence presented at trial supports an unjust enrichment claim, albeit not to the extent that Graves Lumber seeks.

**{¶69}** Because it cannot be determined at this time whether Graves Lumber might be made whole under its mechanic's lien claim, the dissent contends allowing a recovery under its unjust enrichment claim could result in a double recovery. Respectfully, we believe this concern, should it come to fruition, can be addressed by the trial court on remand. *See Fleischer v. George*, 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, ¶ 8 (noting magistrate ordered prevailing party to elect a single claim upon which to collect damages to avoid a double recovery).

**{¶70}** On remand, Graves Lumber cannot recover beyond its actual loss. But the issue of whether there will be a double recovery is speculative. As discussed above, Graves Lumber is not entitled to recover the full amount of its loss under an unjust enrichment theory because that amount is limited to the amount of the Crofts' gain. It is also possible that Graves Lumber will

not recover fully under its mechanic's lien claim because that amount is limited by R.C. 1311.011(B)(2).

{¶71} A double recovery does not result where a party is allowed to retain two recoveries that, when combined, still do not make it whole. *See Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 126 (2001). *See also Filo v. Liberato*, 7th Dist. Mahoning No. 11 MA 18, 2013-Ohio-1014, ¶ 37 ("The existence of a separate judgment does not alter Appellant's ability to make an unjust enrichment claim so long as he remains unpaid for any portion of the work performed and Appellee retains the benefit of that work.").

{¶72} To the extent noted above, Graves Lumber's second assignment of error is sustained.

### III

{¶73} Graves Lumber's assignment of error number one is overruled. Graves Lumber's assignment of error number two is sustained. The Crofts' assignments of error number one and three are overruled. The Crofts' assignments of error number two and four are sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

---

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶74} I concur in the majority's judgment with respect to the Crofts' assignments of error. However, I respectfully dissent from the majority's resolution of Graves Lumber's assignments of error.

{¶75} I would conclude that Graves Lumber's first assignment of error should be sustained. Graves Lumber brought a complaint seeking foreclosure. It named as defendants those who might claim an interest in the property. The complaint demanded that the liens be marshalled and that foreclosure upon the property be ordered. In addition, Graves demanded that "all defendants be required to set up their claims to the property, if any, or be forever barred[.]" Neither Miller Custom Stone nor Maple Lane Wood appeared at trial to present evidence to support their contention that they were entitled to recover under their respective mechanic's

liens. It was Miller Custom Stone's and Maple Lane Wood's burden to come forward to demonstrate their interests in the property at trial. *See Lexington Ridge Homeowners' Assn. v. Schlueter,* 9th Dist. Medina No. 10CA0087-M, 2013-Ohio-1601, ¶ 20. ("[W]here an action is brought by a lienholder asking the court to marshal the liens against the property, the burden is upon those parties that allege to have an interest in the property to assert their claims and interests in the property."). I disagree with the characterization of this assignment of error as bearing upon the sufficiency of the evidence given that the question raised by Graves Lumber is whether the trial court could render judgment in favor of two named defendants that failed to appear at trial under circumstances where Graves Lumber did not stipulate to the validity of their mechanics liens and the basis of the judgment is upon stipulations that were not accepted by Graves Lumber nor introduced as evidence at trial.

{¶76} In this regard, the "stipulations" that were filed prior to, and after trial, in an attempt to evidence the validity of Miller Custom Stone's and Maple Lane Wood's mechanic's liens were not valid stipulations as against Graves Lumber as they were not signed by all parties; specifically, they were not signed by the Plaintiff Graves Lumber. In particular, I disagree that a stipulation that was not signed by a plaintiff could nonetheless be binding upon and eliminate the need for the adverse party to appear at trial to defend an action. Based upon legal precedent, I would hold that the stipulations were a nullity and can carry no evidentiary weight. *See State v. Herold,* 1st Dist. Hamilton Nos. C-910103, C-910104, & C-910105, 1991 WL 243620, *2 (Nov. 20, 1991) (noting that "a stipulation by definition assumes acceptance by the parties of agreed facts" and that an objection to a proposed stipulation would render the stipulation a nullity). Moreover, even assuming the document described as a "stipulation" had some evidentiary value, it had to be entered into evidence at trial in order for it to be considered as evidence. Miller

Custom Stone and Maple Lane Wood did not enter the stipulation into evidence. Thus, having failed to appear to defend Graves Lumber's complaint, Miller Custom Stone and Maple Lane Wood were not entitled to recover in this action.

{¶77} Given that Miller Custom Stone and Maple Lane Wood should not share in the proceeds and the fact that the trial court must recalculate the amount due to lienholders in accordance with the statute (due to sustaining the Crofts' second and fourth assignments of error), I would conclude that it is premature to review Graves Lumber's second assignment of error at this time. If Graves Lumber can be fully satisfied under the mechanics lien, which cannot be determined at this juncture, allowing it to also recover under a theory of unjust enrichment would constitute a double recovery.

APPEARANCES:

SCOTT H. RUPORT and ANTHONY R. BEERY, Attorneys at Law, for Appellant/Cross-Appellee.

ROBERT J. BELINGER and JAMES A. ZAFFIRO, Attorneys at Law, for Appellee/Cross-Appellant.

DAVID J. WIGHAM, LUCAS K. PALMER, and SARAH B. BAKER, Attorneys at Law, for Appellee.

CLINT M. LEIBOLT, Attorney at Law, for Appellee.